*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re Lawrence and Julie Salander,

        Debtors.

-------------------------------------------------------x

Case No.  07-36735
Chapter  7

## MEMORANDUM DECISION ENFORCING SETTLEMENT AGREEMENT

APPEARANCES:
Christopher J. Shore & Julia M. Winters
WHITE & CASE LLP
Attorneys for First Republic Bank
1155 Avenue of the Americas
New York, NY 10036

Louis A. Craco, Jr.
ALLEGAERT BERGER & VOGEL LLP
Attorneys for Debtor, Julie D. Salander
111 Broadway
20th Floor
New York, NY 10006

Randolph E. White
LAW OFFICE OF RANDOLPH E. WHITE
Attorney for Debtor, Julie D. Salander
292 Windsor Place
Brooklyn, NY 11218

Jacob Ginsburg
HELFAND & HELFAND
Attorneys for Wells Fargo f/k/a Wachovia
350 5th Avenue
Suite 2826
New York, NY 10118

First Republic Bank seeks an order enforcing a settlement agreement between it and the chapter 7 Trustee in order to prevent Ms. Salander from bringing claims and raising defenses in a state court foreclosure action.  Ms. Salander opposes the motion, arguing that her claims were revived upon the Trustee's abandonment of her real property, and in the alternative, that the settlement should be vacated under Federal Rule of Civil Procedure 60(b).  Wells Fargo, the holder of the second mortgage on the real property, argues that the settlement should be vacated under Rule 60(b) and that Ms. Salander's claims continue to be property of the estate.  The Court finds that Ms. Salander's claims were property of the estate and have been settled and administered by the Trustee.  Those claims and defenses no longer exist and cannot be raised in state court.  First Republic's motion to enforce the settlement is granted.

## Statement of Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984.  The administration of the Debtors' estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Background

Lawrence and Julie Salander (the "Debtors") commenced a joint chapter 11 case on November 2, 2007 through the law firm of Baker & Hostetler.  The Debtors' bankruptcy filing stemmed from problems with Mr. Salander's business investments.   At the time of filing, Mr. Salander was the subject of multiple lawsuits in New York Supreme Court alleging breach of contract, money had and received, unjust enrichment, conversion, breach of fiduciary duty, fraud

and deceptive acts and practices.  He was under investigation by the Manhattan District Attorney's Office.[1]

Prior to filing, Mr. Salander ran art galleries (the Salander-O'Reilly Galleries or the "Galleries"), including one of the largest privately-owned galleries in the country.  During its period of operation, the Galleries exhibited and managed fine art valued into the millions of dollars.  The day before the Debtors filed this petition, an involuntary chapter 7 case was filed against the Galleries on November 1, 2007.  On November 9, 2007, the Galleries' chapter 7 converted to a chapter 11.

These two cases are intertwined and complicated by the multitude of valuable artwork and antiques housed at the Galleries and at the Debtors' homes.  The Debtors claim ownership of some paintings.  The Galleries claim ownership of some paintings.  Consignors claim ownership of others.  Various parties, including the Debtors' estate and the Galleries' estate, claim competing interests in the paintings.

The artwork and antiques were the principal assets of the Debtors and the Galleries.  The Debtors entered into a stipulation with the Galleries to relocate artwork from their New York City townhouse and Millbrook home to the Galleries' premises and/or a bonded warehouse to be stored at the Galleries' sole cost and expense.  By an order entered in the Galleries' case on March 11, 2008, all claims of ownership of artwork in possession of the Galleries must follow a protocol for assertion and resolution of claims.  The Debtors filed claims on over 100 pieces of artwork in the Galleries' case.  The value of the Debtors' estate depends heavily upon a determination of the Debtors' claims in the Galleries' case.

At the time of filing, the Debtors owned real property located in Millbrook, NY (the "Millbrook Property"), subject to a note and mortgage held by Wachovia and a collateralized

---

[1] Mr. Salander pled guilty to grand larceny and is serving a 6 to 18 year prison sentence.

guaranty of the Galleries' obligations to First Republic Bank ("First Republic").  The Debtors

also owned a townhouse in Manhattan subject to two notes and mortgages held by First Republic

in the total amount of $16,954,547.50.   According to the petition, First Republic held a blanket

security interest on all of the Debtors assets in the amount of $28,478,676.83.

### *Discharge of Ms. Salander*

On April 17, 2008, the Debtors' case was converted to chapter 7 and on April 18, 2008,

the Court appointed a chapter 7 trustee (the "Trustee").  On October 31, 2008, the Trustee

examined the Debtors.  Also present at the October 31, 2008 meeting of creditors was an the

Debtors' chapter 11 counsel, Baker & Hostetler, and an attorney for First Republic.  During that

examination, Trustee showed Ms. Salander several bank papers bearing a signature purporting to

be Ms. Salander's, including powers of attorney and mortgage agreements, which Ms. Salander

denied signing on the record.  The Trustee sought several extensions of time to file a complaint

objecting to the Debtors' discharge due to his ongoing investigation of the Debtors' financial

affairs, including the investigation of a transfer of real property by the Debtors shortly before the

filing of their chapter 11 petition.  *See* Trustee's Mtn. Extend Time, Docket No. 386.

On November 13, 2008, the Committee deposed Ms. Salander as part of a Rule 2004

examination in the Galleries' bankruptcy case.  Present at the deposition were the Debtors'

chapter 11 counsel, Baker & Hostetler, counsel for the Committee, and counsel for First

Republic.   On November 24, 2008, the Committee of Unsecured Creditors of the Galleries' (the

"Committee") filed a motion to extend the time to object to Ms. Salander's dischargability.  The

motion and the response were filed under seal pursuant to an order dated November 21, 2008.[2]

Among other things, the Committee's motion sought additional time to investigate a bank

---

[2] On May 3, 2011, the documents were unsealed by the Court.

account and other financial documents purported to be signed by Ms. Salander, which Ms.

Salander denied knowledge of at her 2004 examination.

Ms. Salander filed *pro se* objections to the motions, arguing that her signature was forged

on several documents, including paperwork with First Republic Bank. Ms. Salander's father, a

licensed attorney, appeared at both hearings on her behalf. On September 23, 2009, Ms.

Salander received her discharge.

### *Settlement Agreement and Abandonment of the Millbrook Property*

First Republic filed a proof of claim in Debtors' case in the amount of $45,067,000.00,

asserting a security interest on all the personal property and assets owned by the Debtors, as well

as the Millbrook Property, and real property located in Manhattan. Allegedly, this security

interest was collateral for loans given by First Republic to the Galleries. On October 21, 2009,

the Court entered an order approving a settlement agreement ("Agreement" or "Settlement

Agreement") between First Republic and the Trustee. The Agreement is complicated and

touches aspects of all the Debtors' assets as well as some assets of the Galleries. It provided

for the transfer to First Republic of a Trustee's deed title of the Manhattan townhouse. In

exchange for this deed, First Republic agreed to release its lien on all the personal property of the

Debtors, including Ms. Salander's jewelry and the contents of the Millbrook and Manhattan

residences. At the time, the Trustee estimated that the sale of these items could raise over $1

million for the estate. The Agreement also provided for the Trustee to receive proceeds from the

sale of some artwork subject to First Republic's lien and granted releases of any claims by the

Debtors against First Republic.

The stipulation included a release of any and all claims against First Republic. The

Agreement states as follows:

> The Trustee hereby acknowledges that the Estate owes the Bank, without defense, setoff or ***counterclaim***, (i) in respect of the Millbrook Property, the principal amount of $1,400,00[0].00 plus interest and such other amounts and expenses (including legal expenses) expended or incurred by the Bank or owed to the Bank . . . and the duly recorded mortgage on the Millbrook Property securing such note . . .
>
> (iii) in respect of the obligations of [the Galleries] under the Prepetition Credit Agreement and arising out of [the Guaranties], all obligations of [the Galleries] in respect of the Prepetition Credit Agreement, which is secured by a lien on all of the personal and fixture property (and all proceeds thereof) of the Salanders, the Estate and Salander Decorative Arts. (emphasis added).

The Agreement also released First Republic from any and all claims and causes of actions "arising from or related in any way to the Estate."  In particular, the Settlement Agreement:

> resolves all claims, demands and causes of action that may be or have been asserted, directly or indirectly, against the Bank **by the Salanders, the Trustee and the Estate** . . . and releases, discharges, and acquits the Bank . . . **from any and all claims** . . . of any kind, character, or nature whatsoever **whether known or unknown**, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, . . . in law, at equity, **whether for tort, fraud contract, violations of federal or state securities laws or otherwise** . . . . (emphasis added)).

The Trustee negotiated this Settlement Agreement to avoid "inherent difficulties, costs and uncertainties involved in any litigation to contest the extent, nature and validity of the security interest of [First Republic]."  *See* Trustee's Application to Approve Settlement ¶ 10, Docket No. 422.  In his motion seeking approval of the settlement, the Trustee stated, "[i]t is respectfully submitted that such settlement would be in the best interest of the estate given the potential outcome which might be achieved by the Trustee in further prosecuting the Adversary Proceeding through trial given the costs, time and uncertainties involved in litigation."  *Id.* at ¶ 12.  On the record of the hearing, the Trustee stated that he believed that First Republic had a properly perfected lien on all of the Debtors' assets.  Wells Fargo, under its former name,

Wachovia, filed an objection to the initial Motion to Approve the Agreement in which it argued that there was not sufficient disclosure of the terms of the settlement and the underlying fraud claims.

Having negotiated the Agreement with First Republic, the Trustee attempted to sell the Millbrook Property. He held auction sales on September 25, 2010, October 5, 2010 and October 26, 2010. The Trustee was unable to sell the property. An order granting the Trustee's motion to abandon the property was entered on October 27, 2010 and First Republic initiated foreclosure proceedings on December 13, 2010.

On February 7, 2011, Ms. Salander filed a verified answer with cross-claims and counter-claims alleging that the documents underlying First Republic's liens and mortgages on the Millbrook Property were fraudulent.

### Motion to Enforce Order Approving Settlement

First Republic now brings this motion asking the Court to: (i) find that the Settlement Agreement and Approval Order are binding on Ms. Salander, or in the alternative that her assertion of counterclaims violates the automatic stay; (ii) find that the Approval Order is *res judicata* as to the counterclaims; and (iii) compel Ms. Salander to withdraw, with prejudice, the counterclaims in the foreclosure action.

Ms. Salander opposes the motion and asks the Court to modify its prior Order approving the Settlement Agreement so that she may assert defenses and counterclaims in the foreclosure litigation, arguing that First Republic's interest in the Millbrook Property was obtained by forgery.

She argues that Federal Rule of Civil Procedure 60(b)(1),(2), (3), (5), and (6) allow the Order approving the Agreement to be vacated or amended. She argues that her interest in the

Millbrook Property reverted to her upon abandonment of the Estate and that because the Trustee

abandoned the property, he never had the ability to enter into the Settlement Agreement.

In response to First Republic's motion to enforce the Settlement Agreement, Wells Fargo,

formerly known as Wachovia, filed a cross-motion in which it seeks an order pursuant to Rule

60(b)(2) and (6): (1) unsealing of Ms. Salander's deposition transcript;[3] (2) vacating or

modifying of the release; (3) declaring that the interest of Ms. Salander in the Millbrook Property

was not abandoned; (4) staying the foreclosure as to the Millbrook Property; (5) equitably

subordinating the non-Wells Fargo liens; and (6) granting leave for Wells Fargo to file an

adversary proceeding.  Wells Fargo similarly asserts that allegations of forgery were not

disclosed to the bankruptcy court at the October 20, 2009 hearing to approve the settlement

agreement and that failure to disclose these forgeries impacted its rights as a secured creditor.

First Republic filed a reply to Ms. Salander and Wells Fargo's cross-motions.  First

Republic argues that her motion under Rule 60(b)(1), (2), and (3) is untimely, and even if timely,

First Republic maintains that Ms. Salander is not entitled to relief under Rule 60(b).

Ms. Salander filed a reply to First Republic and Wells Fargo in which she reargues that

her Rule 60(b) cross motion was timely; that she has standing to assert claims relating to the

Millbrook Property; that the Mortgage held by First Republic is not valid; and that relief is

justified under Rule 60(b).

Wells Fargo filed a response to Ms. Salander and First Republic stating that the non-

disclosure of information obtained during the investigation of the Debtors at the October 31,

2008 meeting of creditors harmed the creditors and reargues its motion under Rule 60(b).

---

[3] These documents have since been unsealed on May 3, 2011.

## Summary of the Law

### The Automatic Stay and Property of the Estate

Once the petition was filed, any claims that Ms. Salander had at the time of filing became property of the estate, and only the Trustee had standing to litigate those claims. The Bankruptcy Code prohibits any other person from possessing or "exercising control over" the Debtors' claims. *See* 11 U.S.C. § 362(a).

Upon the filing of a bankruptcy petition, all entities are automatically stayed from commencing or continuing judicial proceedings against the debtor. *See* 11 U.S.C. § 326(a). The scope of the stay is broad and grants the debtor complete and immediate relief from all creditors. *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000). It also protects creditors by "prevent[ing] dissipation of the debtor's assets before orderly distribution to creditors can be effectuated." *Penn Terra Ltd. v. Dep't of Envtl. Resources*, 733 F.2d 267, 271 (3d Cir. 1984). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999) (citation omitted).

When a bankruptcy petition is filed "all legal or equitable interests of the debtor in property," "wherever located and by whomever held," become property of the estate. 11 U.S.C. § 541(a)(1). "Property of the estate" includes all causes of action that the debtor had a right to bring at the time the bankruptcy was filed, including causes of action that the debtor was not aware of prior to the bankruptcy filing. Collier on Bankruptcy P 541.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 202 (3d Cir. 2000) (stating that property of the estate "includes all kinds of property, including tangible or

intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act") (quoting H.R. Rep. No. 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323); *see also Winick & Rich, P.C. v. Strada Design Assocs. (In re Strada Design Assocs.)*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005) ("Without doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become 'property of the estate.'").

The Debtor's claims now before the Court are based upon documents allegedly forged prior to her filing. Any claims that accrued pre-petition, or as a result of the petition, are property of the estate and may be pursued only by the bankruptcy trustee, not the debtor. *Stanley v. Cmty. Bank, N.A.*, 08-925, 2009 U.S. Dist. LEXIS 8022, at *6 (N.D.N.Y Feb. 4, 2009). A claim accrues under New York law when "all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Aetna Life & Casualty Co. v. Nelson*, 67 N.Y.2d 169, 175 (N.Y. 1986); *see also Piedra v. Vanover*, 174 A.D.2d 191, 194 (N.Y. App. Div. 2d Dep't 1992) (stating that a claim for forgery, which is "but one species of fraud," accrues upon actual or imputed discovery of the fraud).

Although the stated cause of action must have existed at the time of filing, the actual accrual date for state law purposes is not always the "critical" factor for determining whether a cause of action is property of the estate. *Winick & Rich*, 326 B.R. at 236. Claims that are immature at the date of filing are property of the estate if they are "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start." *Stanley*, 2009 U.S. Dist. LEXIS at *7 (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).

In *Stanley*, the court considered facts very similar to those in the case at hand. A woman attempted to sue several banks in district court alleging her husband fraudulently procured loans in her name. *Stanley*, 2009 U.S. Dist. LEXIS at *3. Prior to filing the lawsuit, she and her husband had filed a joint chapter 11 petition, which was then converted to a chapter 7. *Id.* at *4. She claimed that she had not been aware of the extent of the fraudulent activities at the time she filed her bankruptcy petition. *Id.* at *3. The court held that she did not have standing to commence the lawsuit against the banks. *Id.* at *8. Her claims were property of the estate and therefore, could be brought only by the Trustee. *Id.*

The court found that the alleged acts and omissions occurred prior to the bankruptcy filing and were "rooted in [the debtor's] pre-bankruptcy past." *Id.* at *8. Additionally, the court determined that allowing the estate to assert the claims did not hinder the debtor's fresh start as it had no impact on her discharge. *Id.* ("[T]he bankrupt without a . . . claim to preserve has more reason to earn income rather than less.") (quoting *Segal*, 382 U.S. at 380).

Similarly, Ms. Salander's asserted defenses and counterclaims against First Republic in the foreclosure action are property of the estate, regardless of whether they accrued pre- or post-petition. Although she alleges to have only recently discovered the extent of the fraud and forgery claims asserted, the activities that form the basis of her claim arose prior to the date of filing and are "rooted in her pre-bankruptcy past." *Id.* The Debtor has been given a fresh start through the granting of her bankruptcy discharge and that fresh start is not hindered by the estate asserting these claims on her behalf. *See id.* Ms. Salander's claims against First Republic became property of the estate the moment that she filed her bankruptcy petition. *Id.*

***The Trustee's Power to Settle Claims***

The Bankruptcy Code gives a trustee power to "stand[] in the shoes of the debtor" and bring claims founded on the rights of the debtor that could have been brought by the debtor prior to the bankruptcy proceeding. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); 11 U.S.C. § 541, 544, 547. The Trustee was acting under this power when he agreed to settle "any and all claims" against First Republic pursuant to the Settlement Agreement, including potential litigation contesting the extent, nature, and validity of First Republic's security interest and certain guarantees.

At the October 20, 2009 hearing to approve the Agreement, the Trustee told the Court that "this is, in essence, a no-asset case" and "[t]hrough this negotiation we're able to produce what hopefully will be a dividend to the unsecured creditors." *See* Trans. of Oct. 20, 2009 Hearing at 8:7-8. Both the Trustee and the Debtors were aware that some of the documents upon which First Republic's lien was based may have been fraudulent or procured through forgery. *See* Trans. of Oct. 31, 2008 341 Meeting at 53:19–61:14. At the 341 meeting of creditors, the Debtors were shown various documents including loan documents with First Republic and asked whether or not they signed such documents.[4] *Id.* Ms. Salander was shown a copy of the security agreement dated April 14, 2006 between herself and First Republic. *Id.* She stated on the record that the signature appearing on the document was not hers. *Id.* She was shown no fewer than eight other signed documents that day. Ms. Salander stated that the signatures on those documents did not belong to her. *Id.*

A bankruptcy Trustee may litigate or settle and release claims based upon fraud and forgery. *See Lombard v. Lombard*, 2001 WL 548725, at *4 (S.D.N.Y. May 23, 2001)

---

[4] The contents of these documents were not discussed on the record of the meeting of creditors and the Court is unaware of whether or not any of them grants First Republic a security interest on the Millbrook Property.

(settlement agreement that waived any challenge to validity of trust agreement precluded

plaintiff's claim that trust agreement was forged); *In re Y&A Grp. Secs. Litig*., 38 F.3d 380, 384

(8th Cir. 1994) (finding that plaintiff's forgery claim was within scope of class settlement and

thus precluded).  "In determining whether the Trustee has met [the duty under Section 704(1)],

the applicable test is whether the Trustee has exercised due care, diligence, and skill as measured

by a reasonable person standard, *i.e.,* whether the Trustee has acted as an ordinarily prudent

person would have acted under similar circumstances and with a similar purpose."  *In re

Lundborg*, 110 B.R. 106, 109 (Bankr. D. Conn. 1990).  "A bankruptcy Trustee is a conservator

of the estate and must, to the extent possible, be risk averse."  *In re Bakalis*, 220 B.R. 525,

532 (Bankr. E.D.N.Y. 1998).

    In his motion to approve the Agreement, the Trustee affirmed that the "settlement would

be in the best interest of the estate given the potential outcome which might be achieved by the

Trustee in further prosecuting the Adversary Proceeding through trial given the costs, time and

uncertainties involved in litigation."  *See* Application to Approve at ¶10.  The Trustee was aware

of these facts at the time that the Agreement with First Bank was negotiated and made a

determination that the settlement was in the best interests of the creditors due to the risks and

expenses associated with litigating the validity of First Bank's interest in the mortgage.

    The Court approved the Agreement.  *In re Receivership Estate of Indian Motorcycle

Mfg.*, 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial deference to the **business

judgment** of a bankruptcy Trustee when deciding whether to approve a settlement.") (emphasis

added).  The Order approving the Settlement Agreement entered by this Court on October 21,

2009, is a final order entitled to "full res judicata effect."  *In re Gibraltar Res., Inc.*, 210 F.3d

573, 576 (5th Cir. 2000) (concluding that plaintiff who failed to appeal a bankruptcy court's

order approving a settlement was bound by the contents of that settlement); *see also Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232 (1st Cir. 1997) ("The finality of court-approved settlements . . . is important, especially to the efficient administration of the estate and to reassure settling parties that the trustee will not relitigate the settled claims.").

**The Settlement Remains Enforceable**

Ms. Salander argued at the April 14, 2011 hearing that the settlement bars her from counterclaiming against First Republic and estops her from denying the allegations in the state court foreclosure action. *See* Trans. of Apr. 14, 2011 Hearing at 16:1-7. While it is true that the Agreement precludes the Debtor from answering the complaint and asserting counterclaims or relitigating the claims in any other manner, the Debtor incorrectly insinuates that the she received no benefit from this Agreement. *Id.* Ms. Salander benefited a great deal from this Agreement. In negotiating the Settlement, the Trustee "stood in the shoes" of Ms. Salander and was able to negotiate payments to her creditors in exchange for the release of certain claims. She is no longer personally liable on First Republic's mortgage, which may have been the case had litigation progressed by way of adversary proceeding.

Ms. Salander is prohibited from re-litigating any claim that she could have brought at the time of the hearing by *res judicata. See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000). She received notice of the Settlement and did not object to the entry of the Settlement Agreement at the October 20, 2009 hearing. *See* Affidavit of Julie Salander ¶ 4 (acknowledging that she lived at the address where notice was sent).

Ms. Salander makes three arguments for why she did not object to the Settlement in a timely fashion:

1. she was not represented by counsel and could not afford counsel;

2.  she was unaware that the forgery had taken place; and

3.  because the Millbrook Property was property of the estate, she did not have the
    right to object to the agreement, but she regained this right once the Trustee
    abandoned the property.

***Appearing* Pro Se *does not excuse Ms. Salander from having to file opposition.***

Ms. Salander's argument that she did not object to the Settlement Agreement because she did not have, and could not afford, counsel is without merit.  Ms. Salander was given notice of the hearing and could have filed a letter or appeared in court to oppose this motion.  She did not oppose the motion nor did she choose to appeal the order.  Appearing *pro se* is not a defense to failure to file opposition.  *See McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). ("[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.").

Ms. Salander did not begin this case as a *pro se* litigant.  At the time of filing, she was represented by Baker & Hostetler, a law firm with extensive experience in both bankruptcy and white collar criminal defense.  Richard Bernard of that firm attended the October 31, 2008 meeting of creditors with the Debtors, and he and a second attorney from Baker & Hostetler, John Moscow, appeared with Ms. Salander at her November 13, 2008 deposition.  Ms. Salander did not appear without counsel either time she was questioned regarding the validity of her signature on various bank and business documents.

After the conclusion of Baker & Hostetler's representation, Ms. Salander's involvement in her case did not lapse.  She filed two *pro se* objections in this Court.  *See* Debtor's Obj. to

Mtn., Docket No. 390, at 1 ("Since I am still unable to afford counsel, I am again writing to you

personally, this time in order to object to the Trustee's [Motion]"); *see also* Debtor's Obj. to

Mtn, Docket No. 360, at 1 ("Since I am unable to afford counsel, I am writing to you personally

to object to the motion by the Creditor's Committee.").  Upon filing her objections, she was

given an opportunity to be heard and the Court permitted her father, an attorney, to be heard on

her behalf.  *See* Trans. of Dec. 18, 2008 Hearing at 4:20-5:15.

Ms. Salander was represented by competent counsel at the time she discovered the

alleged forgeries. She previously filed *pro se* objections in this Court and she appeared in court

on her own and with the assistance of her father, a lawyer.  Ms. Salander clearly knew how to

object to motions and her failure to object can be construed as nothing other than an

acknowledgement that she did not oppose the motion.  *See McDonald*, 850 F.2d at 124.

### Ms. Salander had knowledge of the alleged forgery in October of 2008.

Ms. Salander argues that she was unaware that her signature was allegedly forged on two

powers of attorney dated March 25, 1997 and March 1, 2002 "until [she] discovered them in the

files of the Dutchess County Clerk's Office on October 28, 2010."  Affidavit of Julie

Salander ¶ 3.  Her allegations are not irrefutable.  While she may have only discovered those

specific documents recently, she was made aware of other documents at least two years prior at

the October 31, 2008 meeting of creditors.  On the record of that meeting, she denied signing at

least 9 documents concerning her secured assets and loan agreements bearing what was

purported to be her signature.  She was accompanied by counsel at the meeting.  *See* Trans. of

Oct. 31, 2008 341 Meeting.

Similarly, Ms. Salander was deposed by the Committee on November 13, 2008 and was shown at least eight documents purporting to bear her signature that she denied signing. Two attorneys appeared with her at the deposition and objected to several questions on her behalf. *See* Trans. of Nov. 13, 2008 Depo. of Julie Salander. On December 9, 2008, Ms. Salander filed opposition to the Committee's motion for Extension of Time to File a Complaint Objecting to Discharge. In that document, she reiterates, "[m]y signature has been forged numerous times without my knowledge or authorization. Any 'complexity' of this case that is due to forgery of my signature should not be charged to me or used as a pretext for delaying my discharge." Debtor's Obj. to Mtn to Extend, Docket No. 360, at 4. Ms. Salander was clearly on notice that some type of fraudulent activity may have occurred at least as early as December 2008.

Ironically, when asked at the deposition whether she ever signed documents with respect to First Republic's loans to the Galleries (the subject of the underlying Settlement Agreement and litigation), Ms. Salander replied "I don't know." *See* Trans. of November 13, 2008 Depo. of Julie Salander at 100:20-23. She then went on to admit signing paperwork "moving [a] mortgage from the bank to First Republic" around 2002 or 2003, which provides some evidence for the Committee, the Trustee, and First Republic to believe that Ms. Salander was liable on at least one First Republic loan and that she was aware that such loans existed. *Id.* at 100:10-102:22; *see also id.* at 103:15-106-15 (stating that signatures on various documents "look[ed] like" hers even though she could not be sure they were and did not recall signing the documents).

If Ms. Salander was truly unaware of two additional forged documents, which were publically recorded with the county clerk, it is due to her own delay in investigating the documents until a time when it was convenient for her to do so. *See Jackson v. Broadcast Music, Inc.*, 2007 U.S. App. LEXIS 23492 (2d Cir. Oct. 5, 2007) (quoting *Higgins v. Crouse*, 147 N.Y.

411, 416 (N.Y. 1895) ("[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.")).

### *Abandonment of the Property does not Nullify the Agreement and Order*

Ms. Salander also suggests that upon abandonment by the estate, the Millbrook Property reverted to the Debtors.  Ms. Salander argues that the mortgage was based upon documents procured by fraud or forgery and believes the mortgage and loans are void *ab initio*.

Ms. Salander quotes *In re Magee*, No. 08-37600,2011 WL 482723 *5 (Bankr. S.D.N.Y. Feb. 3, 2011) for the premise that "[when] the Trustee abandons property, title reverts to the debtor as if no bankruptcy had been filed."   While it is true that the estate's interest in the Millbrook Property reverted back to the Debtors upon abandonment, Ms. Salander errs in assuming that the abandonment of the real property located in Millbrook constituted a retroactive nullification of the part of the settlement that resolved her forgery claims, or any other part of the settlement.

> The trustee is empowered to compromise causes of action belonging to the bankruptcy estate. While the trustee must give consideration to the debtors' interest in any surplus remaining after the payment of all debts, fees, and administrative expenses, see 11 U.S.C. § 726(a)(6), he must also protect the interests of unsecured creditors. Fully litigating a tort claim could easily exhaust assets that would otherwise go to creditors, and in the first instance the person vested with responsibility for deciding whether to settle or fight is the trustee, not the debtor.

*Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988).  The trustee has the ability to retain valuable property and reject burdensome property.  The trustee may abandon "any

property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C § 554(a).

For example, in *In re Nicholson*, the trustee settled the debtor's personal injury action with one doctor for $10,000 and then abandoned the remaining causes of action against the other defendants. *In re Nicholson*, 57 B.R. 672, 673-74 (Bankr. D. Nev. 1986). The debtor's state court attorney moved to enforce an attorney's lien on the funds and opposed the trustee's motion to abandon the remaining causes of action. *Id.* at 674, 676-77. He argued that if the trustee abandoned the litigation, the $10,000 settlement must also be abandoned. *Id.* at 676-77. The court disagreed. It upheld the trustee's settlement and allowed him to abandon the remainder of the litigation as burdensome and of inconsequential value to the estate. *Id.* at 677.

Similarly, the court in *In re NJ Affordable Homes Corp.*, 05-60442, 2007 Bankr. LEXIS 4091, at *12 (Bankr. D.N.J. Dec. 5, 2007), allowed a trustee to abandon real property after releasing claims pursuant to a settlement agreement. While the court noted that "it is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation," the court nevertheless believed that recovery was more beneficial than "the possibility of zero recovery plus accumulation of large professional fees to pursue litigation" and approved the settlement. *Id.* at *9, *10. The court then approved the trustee's motion to abandon the properties upon which the settlement was based, over opposition of the property owners, because the properties "no longer provide[d] value or benefit to the [e]state." *Id.* at *4, *12.

A debtor is prohibited from bringing suit on any unabandoned cause of action once such cause of action becomes property of the estate. *See Barletta v. Tedeschi*, 121 B.R. 669, 672 (N.D.N.Y 1990). As previously discussed, the Debtor's claims against First Republic existed at the time of filing and were property of the estate. The Trustee may abandon property of the

estate after notice and a hearing.  11 U.S.C. § 554(a).  Property not formally abandoned under

subsection (a) is abandoned when the case is closed, but only if that property has been scheduled

and is not otherwise administered.[5]

The Court's October 27, 2010 Order approved only the abandonment of the real property

located at 482 Deep Hollow Road, Millbrook, New York.  Rather than being abandoned by the

Trustee, as Debtor argues, the forgery and fraud claims were ***settled*** pursuant to the Agreement

and have been administered through the settlement.  *See In re Fox*, 03-60547, 2011 Bankr.

LEXIS 922, at *25-26 (Bankr. N.D. Ind. Mar. 15, 2011) ("[T]he trustee is given a substantial

degree of discretion in deciding how best to administer the estate committed to his care and his

actions are measured by a business judgment standard.") (citation omitted).  The Trustee never

sought to abandon the Debtor's claims concerning the validity of First Bank's mortgage; these

claims were already settled pursuant to the Settlement Agreement approved by the Court over a

year prior to the abandonment of the Millbrook Property.  The proceeds of that settlement are

property of the estate and are being administered to the Debtors' creditors.  *See In re Nicholson*,

57 B.R. at 677; *In re NJ Affordable Homes Corp.*, 2007 Bankr. LEXIS at *12; *see also Joy v.*

*Davis (In re Schwarz Publ., Inc.)*, 09-1032, 2009 Bankr. LEXIS 4546, at *10 (B.A.P. 9th Cir.

Aug. 4, 2009) (approving the settlement of a potential preferential transfer action against the

debtor and abandonment of the debtor's books and records despite allegations of fraud by a

creditor).

The Trustee who agreed to release the Debtors' claims against First Republic, is the same

person who attended the meeting of creditors and performed an investigation of the Debtors'

---

[5] Wells Fargo argues that the Debtor's claims were not abandoned by operation of law and remain property of the estate because they were not scheduled.   Property that is neither scheduled nor administered remains property of the estate pursuant to 11 U.S.C. §554(d).  The Debtors argue that their mortgage with First Republic Bank is listed on Schedule D as "Disputed." The Court need not determine whether or not Ms. Salander's claims were properly scheduled since they were administered via the settlement.

financial affairs.  Prior to the Agreement, the claims disputing the validity of the mortgage were

neither burdensome nor of inconsequential value to the estate; they provided the Trustee with

leverage to negotiate the Agreement with First Republic.  *See* Trustee's Application to Approve

Settlement ¶ 10, 12, Docket No. 422.  In negotiating the Agreement, the Trustee used his

business judgment to determine that prosecuting these claims against First Bank was not in the

best interests of the estate and instead negotiated a settlement that would allow for the possibility

of a dividend to unsecured creditors.  *Id.* at ¶ 7-12.

As the Eleventh Circuit stated in *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1276

(11th Cir. 2007), "[o]nly after the settlement agreement effectively precluded that litigation from

proceeding did the estate's rights become of inconsequential value."  In *Martin*, a debtor argued

that the trustee's abandonment of the estate's interest in state court litigation divested the

bankruptcy court of jurisdiction and restored his ability to proceed on litigation that the trustee

had settled during the  pendency of the debtor's chapter 7 case. The abandonment of the

Millbrook Property divested the Trustee of any interest in the property that ***remained*** after the

Agreement was negotiated.  *Martin*, 490 F.3d at 1276.  ("[A]bandonment affected solely the

remaining interest in . . . litigation and does not re-vest [the debtor] with the ability to re-litigate

his defense.").  The abandonment in no way affects the Order Approving the Agreement or the

Court's jurisdiction to enforce such Order.  *Id.*

Settlements "minimize litigation and expedite the administration of a bankruptcy estate,"

and for those reasons are favored in bankruptcy proceedings.  *See In re NJ Affordable Homes*

*Corp.*, 2007 Bankr. LEXIS 4091, *7-8 (Bankr. D.N.J. Dec. 5, 2007) (quoting *Myers v. Martin (In*

*re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)).  The ***claim***, separate and apart from the real estate,

must be abandoned by the Trustee in order for Ms. Salander to bring an action on it. *Martin*, 490 F.3d at 1276.

The Debtors' causes of action were not revived when the Trustee abandoned the Millbrook Property. The Debtor remains bound by the Trustee's Agreement with First Republic, which settled any and all claims the Debtors had against First Republic.

### *Debtor's Cross Motion under Rule 60(b)*

Ms. Salander asks the Court to vacate or amend its previous Order approving the Agreement dated October 21, 2009. Rule 60(b) "strikes a balance between serving the ends of justice and preserving the finality of judgments;" it is not a substitute for a timely appeal. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Relief under Rule 60(b) should be granted "only upon a showing of exceptional circumstances." *Id.* Federal Rule of Civil Procedure 60(b) is applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024. Rule 60(b) allows a court to relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence,
> could not have been discovered in time to move for a new trial
> under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is
> based on an earlier judgment that has been reversed or vacated; or
> applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

**Debtor's motion to reconsider was not made within the one year limitation.**

The Debtor's motion for reconsideration of a settlement order under Rule 60(b)(1), (2), and (3) is untimely. A motion under Rule 60(b) made on the basis of (1) mistake or

inadvertence; (2) newly discovered evidence; or (3) fraud must be brought "no more than one

year after the entry of the . . . order or the date of the proceeding." Fed. R. Civ. P. 60(c). This

motion was brought in opposition to First Republic's Motion to enforce on March 24, 2011, over

one year and five months after the Order Approving the Settlement Agreement was entered.  The

Court "may not enlarge the time for taking action under Rules . . . 9023, and 9024."  Fed. R.

Bankr. P. 9006(b)(2).

The Debtor argues that her motion is excepted from the one year limitation by the

language of Federal Rule of Bankruptcy Procedure 9024 because First Republic's proof of claim

was entered "without contest."  Rule 9024 states:

> Rule 60 F. R. Civ. P. applies in cases under the Code except that (1) a motion to
> reopen a case under the Code or for the reconsideration of an order allowing or
> disallowing a claim against the estate entered without a contest is not subject to
> the one year limitation prescribed in Rule 60(c).

As is clearly stated by the rule, the one year limitation is inapplicable in two situations: 1) a

motion to reopen a case, which is governed by section 350 and Bankruptcy Rule 5010; and 2) a

motion to reconsider an order allowing or disallowing a claim if that claim was "entered without

contest."  Fed. R. Bankr. P. 9024.  A motion to reconsider the allowance or disallowance of a

claim is governed by Rule 3008.

Debtor appears to be misconstruing her own argument and attempting to make an

argument for the reconsideration of the allowance of First Republic's proof of claim.  Debtor's

counsel stated on the record of the April 14, 2011 hearing, "the 9024 motion need not be made

within one year if it seeks reconsideration of an order allowing a claim that was entered without

contest."  *See* Trans. of April 14, 2011 Hearing at 24:1-4.  He argued that while the motion to

approve the Agreement was objected to, "no objection was ever filed to [First Republic's]

claim."  *See id.* at 24:1-19; *see also* Obj. of Wachovia, Docket No. 434. This is not a motion to

reopen the Debtor's case nor is it a motion to reconsider the allowance or disallowance of First Republic's claim.  The Debtor is asking this Court to revoke or modify its Order Approving a Settlement Agreement.

In arguing that the one year limitation is inapplicable, Ms. Salander attempts to stretch the meaning of "reconsideration of a claim" to allow for reconsideration of any and all orders entered for or against First Republic simply because First Republic filed an uncontested proof of claim.  If the Court were to follow this reasoning, the one year limitation would almost never apply. Under the Debtor's theory, most settlements and orders would be subject to reconsideration under Rule 60 for eternity, and any creditor whose proof of claim was uncontested could never be sure that any settlement approved or order entered by the Court would be a final order.  Such a reading is illogical and is not grounded in the language of Rule 9024 or supported by any case cited by the Debtor.

In furtherance of her argument, Debtor cites *Pleasant v. TLC Liquidation Trust (In re Tender Loving Care Health Servs.)*, 562 F.3d 158 (2d Cir. 2009); *In re Mouzon Enters., Inc.*, 610 F.3d 1329 (11th Cir. 2010); *In re PT-1 Commc'ns., Inc.,* 412 B.R. 85 (E.D.N.Y. 2009); *In re Clark*, 2001 WL 1807509 (E.D.N.Y. Dec. 7, 2001); and *In re Wyatt*, 368 B.R. 99 (D.N.H. 2007), all of which involve the reconsideration of the allowance or disallowance of a claim.  The Debtor has not provided explanation for why she is attempting to apply the standard for a motion to reconsider the allowance or disallowance of a claim to her motion to reconsider approval of a settlement, and no reason is given why her motion to reconsider the approval of a settlement should be excepted from the one year limitation.  As such, the one year limitation applies and the Court has no power to vacate the Order pursuant to Rule 60(b)(1),(2), and (3).

***There are no grounds to reconsider the settlement under Rule 60(b).***

Even if the motion to reconsider was timely, Debtor does not offer grounds for reconsideration.

Rule 60(b)(1) requires the movant demonstrate mistake, inadvertence, surprise, or excusable neglect.  Debtor argues that she was "surprised" by the abandonment of the property and the unearthing of the forgeries.  She also argues that "given that she has been unrepresented since April 2008 and in view of the extremely difficult circumstances of her life since that time" her failure to challenge the Agreement constitutes "mistake," "inadvertence," and "excusable neglect."

Abandonment of property of the estate is not "surprising" within the meaning of Rule 60(b).  It is something that occurs in a chapter 7 case.  *See* 11 U.S.C. § 554.  The Debtors' Schedule A lists the Millbrook property as having a value of $5 million and secured claims in the amount of $3.1 million.  In today's real estate market, it is not "surprising" that the house could not be sold and was abandoned by the estate.

As previously discussed, the Debtor's "unearthing" of forgeries was only surprising to her because she failed to look at the public record sooner.  She first became aware of forgery of her signature on documents relating to First Republic Bank as early as 2008.  See *See* Trans. of Oct. 31, 2008 341 Meeting; Trans. of Nov. 13, 2008 Depo. of Julie Salander.  She had ample notice of possible forgeries and of the motion to approve the settlement in order to formulate a timely objection with or without an attorney.  *See First Nat'l Life Ins. Co. v. Cal. Pacific Life Ins. Co.,* 876 F.2d 877, 880 (11th Cir. 1989) (determining that failure to submit timely evidence is

not excusable neglect "because [litigant] failed to demonstrate that the proffered materials could not have been provided earlier").

Appearing *pro se* does not remove the debtor from the ordinary burdens of litigation. *See Graham Kandiah, LLC v. JPMorgan Chase Bank, N.A.*, 2009 WL 1704570, at *3 (S.D.N.Y. June 18, 2009) (finding that being a *pro se* plaintiff, in and of itself, is not an exceptional circumstance warranting Rule 60(b)(1) relief). "[C]ourts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of friendliness to claims of unfortunate failures to put in one's best case." *See Salter v. Hooker Chemical*, *Durez Plastic & Chemical Div.*, 119 F.R.D. 7, 9 (W.D.N.Y. 1988) (denying a motion to reconsider under Rule 60(b)(1) because a *pro se* plaintiff failed to exercise diligence). The difficult circumstances described by Ms. Salander– raising children as a single parent, having marital trouble, living with a spouse with criminal and drug problems– are unfortunate but sadly not "exceptional" circumstances. The Debtor has offered no law, and the Court can find none, demonstrating that they are.

The reasons provided by Ms. Salander do not give rise to relief under Rule 60(b)(1). The motion to reconsider pursuant to Rule 60(b)(1) must be denied.

Rule 60(b)(2) requires that the Debtor demonstrate the existence of "newly discovered evidence." Debtor argues that she was not aware of the allegedly forged documents until October 28, 2010, when she visited the Dutchess County Clerk's Office. The Second Circuit requires a party seeking relief under Rule 60(b)(2) to demonstrate that the "newly discovered evidence" is "truly newly discovered or . . . could not have been found by due diligence." *Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010).

As previously discussed, the Debtor has not demonstrated due diligence. She waited almost two years after discovering allegedly forged mortgage documents to check the records on file with the Dutchess County Clerk.  Due diligence required Ms. Salander to check with the County Clerk's office at least as early as October 31, 2008, when she was provided with paperwork relating to First Republic's mortgage that she testified she never signed.  The Debtor presents no evidence that could not have been easily uncovered in time to file opposition to the settlement; the motion to reconsider pursuant to Rule 60(b)(2) must be denied.

The Debtor argues that the order should be reconsidered based upon fraud pursuant to Rule 60(b)(3).  The Debtor gives no explanation for the fraud except that the Motion to Approve the Settlement did not address her allegations of fraud.

The Debtor does not allege that fraud prevented her from opposing the motion or from appealing the order.  Rather, she seems to argue that the Trustee and First Republic had a duty to discuss the facts and allegations of the underlying claims being settled.  Rule 60(b)(3), however, requires proof that the fraud prevented the moving party from fully and fairly presenting her case.  *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988) (movant must demonstrate that "nondisclosure worked some substantial interference with the full and fair presentation of the case"); *see also Fleming v. New York Univ.*, 865 F.2d 478, 485 (2d Cir. 1989) (Rule 60(b)(3) cannot serve as an attempt to relitigate the merits).  There is no evidence that any party fraudulently prevented the Debtor from objecting to the settlement or otherwise litigating her case. The Debtor's motion is nothing more than an attempt to relitigate claims previously settled by the Trustee. The motion to reconsider pursuant to Rule 60(b)(3) must be denied.

Rule 60(b)(4) is inapplicable.  The underlying judgment is not void and the Debtor does not argue such.

Pursuant to Rule 60(b)(5), the Court may vacate an order if applying it prospectively is no longer equitable. Virtually any court order has an effect on future actions, "and has, in the literal sense, some prospective effect." *See Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138-39 (D.C. Cir. 1988). Rule 60(b)(5) requires more than an effect on future action.

The Debtor makes no more than a blanket statement that the prospective application of the Order approving the Settlement Agreement is inequitable. Since the Debtor failed to make a factual or legal argument as to why there is inequity, the Court will assume that the Debtor meant to argue that precluding her from litigating her fraud claims is inequitable. An order's "preclusive effects" does not qualify as "prospective application" under Rule 60(b)(5), "which is addressed to 'executory' decrees or ones involving 'the supervision of changing conditions or circumstances.'" *Hall v. CIA*, 437 F.3d 94 (D.C. Cir. 2006).

Even if the Order does apply prospectively, it is not inequitable. Great inequity would occur, however, if the Order were to be vacated or amended. "The finality of court-approved settlements . . . is important, especially to the efficient administration of the estate and to reassure settling parties that the trustee will not relitigate the settled claims." *Id.* (quoting *Petitioning Creditors of Melon Produce v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir.1997). The Trustee entered this Agreement in exchange for the rights to sell certain property of the Debtors, including personal property and parts of the Debtors' art collection, for the benefit of unsecured creditors. The Agreement has been in place for over a year and has been relied on by third parties in and outside this bankruptcy case. Without this Agreement, the case would likely be a "no asset" case. To amend the Agreement at this time could mean that any property sold or abandoned by the Trustee in the past year would have to be returned to the estate and any funds

paid out to creditors from these proceeds would need to be recovered. This would cost the estate greatly in time and money and prejudice the unsecured creditors.

The Debtor has failed to demonstrate cause for reconsideration under Rule 60(b)(5).

Rule 60(b)(6) should be used only in "extraordinary circumstances." *Cole v. Household Fin.*, 382 B.R. 20, 25 (Bankr. E.D.N.Y. 2008) (citing *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 190 n. 8 (2d Cir. 2006). The Debtor argues that the mortgage is based upon her husband's fraudulent scheme and that application of the Settlement Agreement would result in her home being foreclosed upon by First Republic. Reasons for relief that fall under other subsections of Rule 60(b) do not qualify as justification for relief under Rule 60(b)(6). *See Cotto v. United States*, 993 F.2d 274, 277 (1st Cir. 1993). The Debtor's justification under Rule 60 (b)(6) were previously argued under subsections (1) through (5), making the subsection inapplicable. They also do not amount to "extraordinary circumstances" as required under Rule 60(b)(6). *See In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989) (failing to take advantage of pre-judgment litigation opportunities precludes granting of relief post-judgment); *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (failure to act diligently to protect one's own rights does not justify relief); *Mitchell v. Hobbs*, 951 F.417, 420 (1st Cir. 1991) (an unexplained failure to timely appeal when such opportunity was available, does not justify relief under Rule 60(b)(6)).

Debtor's motion for relief pursuant to Rule 60(b)(6) is denied.

### *Wells Fargo's Cross Motion*

Wells Fargo makes a cross-motion for reconsideration of the order approving the Agreement pursuant to Rule 60(b)(2) and (b)(6). The inapplicability of Rule 60(b)(2) is discussed above.

Wells Fargo, the second mortgage holder on the Millbrook Property, asks this Court to reconsider the Agreement under Rule 60(b)(6). Wells Fargo advised the Court at the April 14, 2011 hearing that Ms. Salander alleges her signatures were forged on the First Republic and Wells Fargo mortgage documents in the litigation currently pending in the state court. In Wells Fargo's view, First Republic entered into a settlement without disclosure of the forgery claims and now is attempting to use the Agreement as a shield for those claims, leaving Wells Fargo subject to the forgery claims in state court. Wells Fargo states that it only recently learned of allegations of forgery made during the testimony contained in the sealed deposition transcript of Ms. Salander and argues that there was no disclosure of the forgery claims at the time the motion to approve the Settlement Agreement was heard.

Rule 60(b)(6) is an extraordinary remedy and should not be used as a substitute for other legal remedies. *See In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989). Relief should be granted under Rule 60(b)(6) when "exceptional circumstances prevented the moving party from seeking redress through the usual channels." *Id.* Wells Fargo argues that it is prejudiced by the sealing of Ms. Salander's November 13, 2008 deposition. Those documents were unsealed on May 3, 2011 and are available for Wells Fargo's review. The deposition provides no more proof of forgery than was available from the record of the 341 meeting. It may actually help prove the opposite. Ms. Salander admits to signing at least one First Republic mortgage document and states that several others look like hers even though she does not recall signing them.

Rule 2004 examination transcripts are not usually filed as part of the public record and Wells Fargo offers no explanation for why Wells Fargo did not or could not perform its own deposition of the Debtors. *See* Fed. R. Bankr. P. 2004. Wells Fargo also had an opportunity, as

all creditors do, to attend the meeting of creditors, where the Trustee examined the Debtors and

questioned them about the validity of their signatures on various financial documents.  First

Republic chose to attend the October 31, 2008 meeting of creditors.  According to the transcript

of the meeting, Wells Fargo did not appear.  Had Wells Fargo been diligent in its own

investigation of the Debtors by attending the 341 meeting, performing its own investigation of

documents, and conducting its own examination of the Debtors pursuant to Bankruptcy Rule

2004, it would have been privy to the same information as the Committee and the Trustee.

Wells Fargo, under its previous name, Wachovia, filed an objection to the initial Motion

to Approve the Agreement in which it argued that there was insufficient disclosure of the terms

of the settlement, a substantially similar argument to the one made in its cross-motion– lack of

disclosure.  At the hearing held by this Court on October 20, 2009, Wells Fargo stated that its

objection to the Motion to approve the Agreement was resolved and Wells Fargo never appealed

the Approval Order.  *See* Trans. of Oct. 20, 2009 Hearing at 7:10-10:16 ("[w]e would just like

recited that our objection was there, is still on the record and that as long as we're paid in full at

closing, we have no further objections.").  No argument was made at the October 20, 2009

hearing that the settlement did not provide enough disclosure.  Had this issue been pressed by

Wells Fargo at the time, perhaps it may have uncovered the Debtor's alleged forgery  at that

time. Wells Fargo has failed to demonstrate that it was prevented from obtaining this relief

through the usual channels. *Zimmerman*, 869 F.2d at 1128.

Wells Fargo chose not to investigate the Debtors' finances "through the usual channels,"

such as attending the meeting of creditors or seeking to examine the Debtors under Rule 2004,

and now asks the Court to reevaluate the Trustee's investigation of the Debtors' claims.  *See id.*

Wells Fargo's argument that the Agreement is inequitable is premised upon the Debtor's having

valid and enforceable forgery claims, but the claims alleged by the Debtor in the state court

action, are just that—allegations.  There has been no determination in this or any court on those

claims and there may never be by virtue of the settlement. The Trustee, as representative of the

estate, has a duty to investigate the financial affairs of the debtor and "collect and reduce to

money property of the estate." 11 U.S.C § 704(a); *Edmonston v. Murphy (In re Edmonston),* 107

F.3d 74, 76 (1st Cir. 1997).  A Trustee is also eligible to receive "reasonable compensation,"

which is calculated as a percentage of what the Trustee collects and disburses. 11 U.S.C. § 326,

330.  If the Trustee believed that the Ms. Salander's forgery claims were viable, he had both a

statutory duty and monetary incentive to pursue them.  Instead, the Trustee used his business

judgment to settle those claims in exchange for the ability to pursue more tangible assets for the

benefit of the estate.

The Committee would have equally benefited from a determination that First Republic's

mortgage was invalid as more money may have been available to the unsecured creditors in the

Galleries' case if the Millbrook Property could have been sold free and clear of First Republic's

mortgage.  *See* 11 U.S.C. § 323(a).  The record is clear, however, that both the Committee and

the Trustee investigated the Debtor's financial situation prior to her receiving her discharge and

neither attempted to pursue this litigation.

The Court finds that the Settlement Agreement between the Trustee and First Republic is

enforceable against the Debtor.  Wells Fargo's cross-motion is denied.

## <u>Conclusion</u>

First Republic's Motion to Enforce the Agreement is granted.  The Debtor is precluded

from raising forgery or any other claim in the state court foreclosure proceeding that has been

settled in the Agreement.  Such claims and defenses have been waived by the Settlement. The

cross-motions of the Debtors and Wells Fargo are denied.  The Foreclosure will not be stayed

and the Order approving the Agreement will not be vacated.  First Republic shall submit an order

consistent with this decision.


Dated:  Poughkeepsie, New York
        June 2, 2011

                                        /s/ Cecelia G. Morris
                                        U.S. Bankruptcy Judge, S.D.N.Y.