*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re Lawrence and Julie Salander,
        Debtors.

Case No. 07-36735
Chapter 7

--------------------------------------------------------x

# MEMORANDUM DECISION PROHIBITING WELLS FARGO FROM ASSERTING THE SETTLED FORGERY CLAIM OR ANY OTHER ESTATE CLAIMS IN STATE COURT

APPEARANCES:

Louis A. Craco, Jr.
ALLEGAERT BERGER & VOGEL LLP
Attorneys for Debtor, Julie D. Salander
111 Broadway
20th Floor
New York, NY 10006

Randolph E. White
LAW OFFICE OF RANDOLPH E. WHITE
Attorney for Debtor, Julie D. Salander
292 Windsor Place
Brooklyn, NY 11218

Christopher J. Shore & Julia M. Winters
WHITE & CASE LLP
Attorneys for First Republic Bank
1155 Avenue of the Americas
New York, NY 10036

Jacob Ginsburg
HELFAND & HELFAND
Attorneys for Wells Fargo Bank, National Association f/k/a Wachovia
350 5th Avenue
Suite 2826
New York, NY 10118

First Republic Bank ("First Republic") filed a motion to compel Wells Fargo Bank ("Wells Fargo") to comply with the automatic stay and prior bankruptcy court rulings, and asks that the Court direct Wells Fargo to withdraw state court pleadings that assert the Debtor's forgery claim and other claims of the estate. Wells Fargo argues that it is free to assert a claim of forgery in state court since it received no benefit from the settlement agreement between the chapter 7 trustee and First Republic and that its causes of action in state court are not derivative. Wells Fargo argues that it should not be precluded from contesting the First Republic foreclosure litigation. The Court finds that Wells Fargo is precluded from asserting the Debtor's claim of forgery, a derivative forgery claim, or any other estate claims in the state court action. Whether Wells Fargo has in fact raised direct causes of action should be determined by the state court.

## Statement of Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. The administration of the Debtors' estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Background

The Court adopts the factual background as stated in its June 2, 2011 Memorandum Decision and uses terms as defined in that Memorandum Decision.

*The Current Motions*

On June 23, 2011, this Court entered an Order Enforcing Order Approving Settlement Agreement against the Debtor. That order "barred [the Debtor] from pursuing claims settled and released by the Trustee against [First Republic] in any forum, including but not limited to, the Foreclosure Defenses and Counterclaims."

Since the entry of the Order, the Debtor filed an amended answer in the state court foreclosure proceeding ("Foreclosure Action"), withdrawing her counterclaims and related affirmative defenses. On March 10, 2012, First Republic moved for summary judgment in the Foreclosure Action.

On March 23, 2012, Wells Fargo, which had not filed a timely answer in the Foreclosure Action, filed a Cross-Motion to Compel First Republic to Accept Wells Fargo's Answer and Counterclaims and opposition to First Republic's Summary Judgment. Wells Fargo's pleadings seek, among other things, to: (i) equitably subordinate the First Republic mortgage to Wells Fargo's mortgages; (ii) obtain priority over First Republic under N.Y. Real Property Law § 291; and (iii) recover damages for First Republic's alleged unjust enrichment.

On March 26, 2012, the Debtor filed opposition to First Republic's motion for Summary Judgment and motion to sever cross-claim and counterclaims. Included with that opposition is the supporting affidavit of the Debtor. These pleadings contain allegations that First Republic's mortgage was obtained by forgery and as such is void *ab initio*.

On April 9, 2010, First Republic's counsel sent a letter to Wells Fargo and the Debtor asking them to withdraw their opposition and warning First Republic would bring the matter to this Court's attention if not withdrawn.

On April 12, Wells Fargo responded by letter asserting that it was free to assert that First Republic's mortgage was void *ab initio* under New York real property law and the Settlement Agreement.

On April 19, 2012, the Debtor filed a motion in this Court seeking a declaration that she is not violating the automatic stay or the Court's Memorandum Decision and Order Enforcing the Settlement Agreement. Her counsel also responded to First Republic by letter.

On May 1, 2012, Wells Fargo filed a "Protective Response" to the Debtor's motion arguing that its state court pleadings are not violative of this Court's Memorandum Decision Enforcing the Settlement Agreement and is not violative of the Order Approving the Settlement Agreement dated October 21, 2009.

On May 1, 2012, First Republic filed its Motion for Contempt, Motion to Compel/Opposition of Julie Dowden (f/k/a Julie D. Salander) and Cross-Motion for an Order Holding Debtor in Contempt and a Motion to Compel Wells Fargo to Comply with the Automatic Stay and Prior Bankruptcy Court Orders.  First Republic argues, among other things, that Debtor is seeking to exercise control over property of the estate and collaterally attacking this Court's prior orders; and that Wells Fargo is attempting to litigate the precise forgery and fraud claims that were settled and released by the Trustee despite this Court's Order affirming that the settlement was valid and enforceable.  First Republic also asks this Court to compel Wells Fargo to withdraw its proposed answer and counterclaims and opposition to summary judgment.  It argues that Wells Fargo's claims of equitable subordination; fraudulent conveyance actions; and unjust enrichment are improperly asserting estate causes of action and cannot be brought in state court.  First Republic also argues that Wells Fargo is estopped from arguing that the First Republic mortgage is not valid and duly recorded.

On May 8, 2012, Wells Fargo filed opposition to First Republic's motion and the Debtor filed a reply arguing that it preserved its right to contest the foreclosure action; it is not a party to the settlement; the state court has jurisdiction to decide the issues; and that it may properly contest void mortgage issues.

On May 11, 2012, the Debtor filed a reply to First Republic's opposition arguing that she is not attempting to "end-run" around this Court's order.  She argues that whether Wells Fargo or

First Republic are first in priority, she knows that she cannot take from the proceeds of any foreclosure sale until First Republic's lien is satisfied and that she may legally support Wells Fargo's contentions of forgery.

At a hearing held on May 15, 2012 to consider these motions, the Court found the Debtor in contempt of this Court's June 23, 2011 Order but reserved decision as to whether Wells Fargo could assert claims against First Republic in the Foreclosure Action.  A Consent Order holding the Debtor in Contempt was entered on May 24, 2012.

## Summary of the Law

There seems to be some confusion over what property remains property of the estate and what property was, but is no longer, property of the estate.  In order to make the record clear, the Court notes that the Debtor's forgery claim is separate from any state cause of action, whether derivative or direct, that Wells Fargo may be permitted to bring in its own right, and that Debtor's forgery claim exists distinctly and separately from the Millbrook Property.  The Court will interpret each separately.

### *The Debtor's Claim of Forgery against First Republic*

"[T]he bankrupt estate includes 'all legal or equitable interests of the debtor . . . as of the time of the commencement of the case.*"  In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 437 (S.D.N.Y. 1993) (citing 11 U.S.C. 541(a)(1)).[1]  The trustee has the power to stand in the shoes of the debtor and only the trustee "has standing to bring any suit that the debtor could have instituted had it not petitioned for bankruptcy." *Ionosphere*, 156 B.R. at 437.  Put more directly, "[i]f a cause of action belongs to the estate, creditors may bring such an action *only if* the Trustee abandons it or otherwise allows the creditors to pursue it independently." *Id.* (citing 11 U.S.C. §

---

[1] "[P]roperty of a bankruptcy estate also includes 'any interest in property that the trustee recovers' under specified Bankruptcy Code provisions." *In re Colonial Realty Co*., 980 F.2d 125, 131 (2d Cir. 1992).

554). Because the trustee acts for the benefit of the estate as a whole, claimants may be prohibited from pursuing such actions and are bound by the outcome of the trustee's action. *Id.*

In *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 707 (2d Cir. 1989), the Second Circuit held that a creditor did not have standing to assert a cause of action against a third party where the claims were property of the estate and no direct injury was asserted under state law. ("If the claims asserted by [the creditor] in this action are property of the debtor . . . under state law and therefore properly brought by the trustee, and if PepsiCo has not alleged a direct injury traceable to [the defendant], [the creditor] does not have standing to assert those claims outside of the bankruptcy proceeding."). The Second Circuit held that while "jurisdiction may be proper in more than one forum, . . . . Congress has given standing . . . to the bankruptcy trustee." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 707 (2d Cir. 1989). The Second Circuit also noted that the creditor would have had to obtain relief from the automatic stay or an order of abandonment of the claim by the trustee. *Id.*

Here, the Debtors' claim of forgery against First Republic was clearly property of the estate and Wells Fargo is precluded from asserting that claim on behalf of the Debtor. Wells Fargo never requested relief from the stay in order to pursue this claim and the trustee never abandoned this claim. As opposed to abandoning this claim, the trustee actively settled it. As was stated in this Court's June 2, 2011 Memorandum Decision,

> [t]he Bankruptcy Code gives a trustee power to 'stand[] in the shoes of the debtor' and bring claims founded on the rights of the debtor that could have been brought by the debtor prior to the bankruptcy proceeding. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); 11 U.S.C. § 541, 544, 547. The Trustee was acting under this power when he agreed to settle 'any and all claims' against First Republic pursuant to the Settlement Agreement, including potential litigation contesting the extent, nature, and validity of First Republic's security interest and certain guarantees.

*In re Salander*, 450 B.R. 37, 47 (Bankr. S.D.N.Y. 2011). Once a settlement is reached, the litigation concerning the controversy is rendered moot and further court action is unnecessary. *See* 15 James Wm. Moore, et. al., Moore's Federal Practice § 101.93[4] (3d ed. 2007).

Wells Fargo argues that it should not be bound by the Settlement Agreement because, as a secured creditor, it received no benefit from the Settlement and because it had no knowledge of the alleged forgery prior to this Court's approval of the Settlement Agreement.

Whether Wells Fargo received a benefit from this settlement is irrelevant and its assertion that it received no benefit is inaccurate. The Debtors' estate has not yet been fully administered. While Wells Fargo argues that it is not an unsecured creditor and therefore received no benefit from this settlement, it has yet to be seen whether Wells Fargo will be paid in full through the Foreclosure Action or whether it will be entitled to file a deficiency claim in this proceeding and receive a distribution as an unsecured claimant. Moreover, a settlement need not be in the best interest of each creditor individually. Rather, the chapter 7 trustee acts for the benefit of the estate and the finality of court-approved settlements is important to the administration of the estate. *See Petitioning Creditors of Melon Produce, Inc., v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997).

Wells Fargo argues that it had no knowledge of the Debtor's allegations of forgery prior to this Court's approval of the settlement. As was stated in this Court's June 2, 2011 Memorandum Decision, the trustee settled ***all*** claims, ***known or unknown***. Regardless of whether or not the Debtor's forgery claim accrued under state law at the time the petition was filed, it was property of the estate and therefore, properly settled by the trustee. *Salander*, 450 B.R. at 46.

The Court also explained that Wells Fargo may have gained knowledge of the alleged forgeries had it been a more diligent creditor. Wells Fargo had the opportunity to attend the October 31, 2008 meeting of creditors where the chapter 7 trustee questioned the Debtors about the validity of their signatures on various bank documents but Wells Fargo chose not to attend. *Id.* at 57-58. The reason given for failing to attend the meeting of creditors is that the Debtors were making adequate protection payments. However, the meeting of creditors has no bearing on whether the creditors are being paid adequate protection. Rather, a debtor is required to appear and be examined under oath by the trustee and by any creditor who wishes to participate in the examination. Collier on Bankruptcy P 341.02[d] ((Alan N. Resnick & Henry J. Sommer eds., 16th ed.). "[C]reditors may appear at the meeting of creditors to participate in the examination of the debtor or in the other aspects of the meeting." *Id.* at 341.02[a].

> The questions asked [at the meeting of creditors] generally concern the debtor's financial affairs, assets and liabilities, as initially set forth in the schedules and statements filed by the debtor. The purpose of the examination is to make a determination as to whether assets have been concealed, whether there has been any improper disposition of assets, whether a chapter 7 debtor's case might be considered an "abuse" under section 707(b), or if there are grounds for objections to exemptions or to discharge.

*Id.*

Wells Fargo had the opportunity to appear at the meeting of creditors to either examine the Debtors for its own purposes or to listen to the examination of the Debtors by the Trustee. Had Wells Fargo attended the meeting of creditors, it would have learned of some alleged forgeries and may have been able to examine the Debtor as to its own loan documents or the loan documents of First Republic.

Wells Fargo also had the opportunity to oppose or appeal the settlement, which the Court addressed in its June 2, 2011 Memorandum Decision. *See id.* at 57 ("Wells Fargo, under its

Page **8** of **15**

previous name, Wachovia, filed an objection to the initial Motion to Approve the Agreement in which it argued that there was insufficient disclosure of the terms of the settlement, a substantially similar argument to the one made in its cross-motion—lack of disclosure. At the hearing held by this Court on October 20, 2009, Wells Fargo stated that its objection to the Motion to approve the Agreement was resolved and never appealed the Approval Order."). Similarly, Wells Fargo failed to appeal the Court's June 2, 2011 Memorandum Decision and the Court's June 23, 2011 order denying Wells Fargo's cross-motions.

Wells Fargo is "bound by the outcome of the [T]rustee's litigation"—the Settlement, which provided First Republic with a valid and enforceable first priority lien despite the Debtor's allegations of forgery and mooted the underlying litigation of same.

*The Millbrook Property*

At the hearing held on May 15, 2012, Wells Fargo argued that it sought, in its previous motion, to have this Court make a determination as to the priority of its lien and was denied that opportunity by the Court.  Such a request is properly brought as an adversary proceeding. *See* Fed. R. Bankr. P. 7001 (stating that a proceeding to determine the validity, priority, or extent of a lien must be commenced as an adversary proceeding).  Adversary proceedings are nothing more than lawsuits commenced in a bankruptcy action by the filing of a complaint with the Court, which may be commenced by a plaintiff at any time.  Fed. R. Bankr. P. 7003 (stating that Federal Rule of Civil Procedure 3 applies in adversary proceedings and that "[a] civil action is commenced by filing a complaint with the court.").

While the real property was property of the estate at the time the Trustee entered into the Settlement Agreement, at the time of Wells Fargo's cross-motion, the Court had already approved the Trustee's abandonment of the Millbrook Property.  *See Salander*, 450 B.R. at 50-52

(explaining that the Trustee settled, but did not abandon, the Debtor's forgery claim and later abandoned the Debtor's real property—which was no longer subject to the Debtor's forgery claim because of the earlier Settlement Agreement). As of October 27, 2010, the Millbrook Property is no longer property of the estate. *See* Collier on Bankruptcy P 554.02[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[A]bandonment constitutes a divesture of all of the estate's interests in the property.").

Abandonment of property ends the bankruptcy court's jurisdiction to determine disputes concerning that property, unless the result of the dispute could have some effect on the bankruptcy case. *Id.*; *see also In re Xonics, Inc.*, 813 F.2d 127, 132 (7th Cir. 1987). In *Xonics*, Judge Easterbrook stated that "[s]ometimes the practical effect of abandonment is to fold up the bankruptcy case, to remit claimants to the 'abandoned' assets to whatever remedies they have at state law. . . . When the disposition of the abandoned assets cannot possibly affect other creditors, there is no reason for the bankruptcy court's jurisdiction to linger. A party believing that competing claims to the abandoned assets should be resolved by the bankruptcy court must object to the abandonment." Neither Wells Fargo nor First Republic objected to the abandonment of property nor did either appeal the October 27, 2010 Order. Thus, the creditors are now left to pursue their remedies in state court.

Even if the estate continues to maintain some interest in the determination of the Foreclosure Action, the state court has concurrent jurisdiction over the action. *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 459 B.R. 190, 197 (Bankr. S.D.N.Y. 2011) ("While the Court enjoys exclusive jurisdiction over property of the estate, it only enjoys nonexclusive jurisdiction over bankruptcy proceedings that may affect property of the estate.").

Because the estate's interest in the forgery claims was settled by the Trustee and any remaining interest in the property was abandoned, the state court is the more proper forum for determining the validity, priority, and extent of Wells Fargo's lien on the Millbrook Property.

***Wells Fargo's Direct (non-Derivative) Claims against First Republic***

First Republic argues the claim for forgery that Wells Fargo is pursuing in the Foreclosure Action is a derivative claim that has been settled by the trustee. Wells Fargo argues that its claim is not derivative and, therefore, remains viable.

Usually a party only has standing to pursue a cause of action if a wrongful act injures a legal right or property interest held by that party. *Bartfield v. Murphy*, 578 F.Supp.2d 638, 645 (S.D.N.Y. 2008). "However, the common law often gives an individual standing to bring a 'derivative' action on behalf of a legal entity, such as a corporation, in which [it] holds an interest if that entity would be the only party entitled to bring a direct suit and has failed to do so." *Id.* In the bankruptcy context, it is only the trustee (or in a chapter 11 case, the debtor-in-possession) who has independent standing to pursue estate causes of action. *In re Cooper*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009). And in a chapter 7 case, there is no textual basis for allowing a creditor to pursue an estate claim derivatively. *In re Cooper*, 405 B.R. 801, 804 (Bankr. N.D. Tex. 2009).

In *In re Cooper*, 405 B.R. 801 (Bankr. N.D. Tex. 2009), an individual creditor sought permission from the bankruptcy court to pursue turnover actions and other estate actions, such as state law fraud claims. The court reasoned that in a chapter 7 case, unlike in a chapter 11, "there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor: (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing." *In re Cooper*, 405 B.R. 801, 804

Page **11** of **15**

(Bankr. N.D. Tex. 2009). The court noted that in chapter 7 cases, "a trustee has a unique role as an independent fiduciary, with a completely different perspective and interest in a bankruptcy estate than an individual creditor" and saw "no equitable rationale to deviate from the Bankruptcy Code's apparent remedial scheme *vis-a-vis* avoidance actions and other estate causes of action." *Id.* at 804, 812 ("[A]llowing a creditor—a non-statutory fiduciary—to go forward in the Chapter 7 trustee's stead could facilitate a creditor 'hijacking' a Chapter 7 bankruptcy case in a manner that Congress did not envision.").

Even if a creditor in a chapter 7 case could raise an estate claim derivatively, its right to pursue that cause of action is extinguished upon settlement by the trustee. In *In re Ambac Financial Group, Inc.*, 2011 WL 6844533, at *2 (S.D.N.Y. 2011), the district court affirmed a debtor-in-possession's power to settle derivative claims on behalf of individual shareholders and stated that the settlement did not amount of an abandonment of the derivative claims. *Id.* at *3 "Such a position, if accepted, would essentially render null the previously established power of a debtor-in-possession to settle the claims held by a bankruptcy estate." *Id.* The same reasoning applies here. Assuming that Wells Fargo had standing to pursue a derivative action against First Republic, allowing it to do so now, after the trustee has already settled that claim, would "render null" the trustee's power to settle estate claims. *Id.*

As such, Wells Fargo does not have the ability to raise any estate cause of action in the Foreclosure Action. As was discussed earlier, only the trustee had standing to assert the Debtor's forgery claim prior to this Settlement and he has settled that claim, which is now moot pursuant to federal civil procedure law and federal bankruptcy law. *See supra*. This Court has already ruled that when the trustee abandoned the Millbrook Property, he abandoned any interest

that remained in the Property *after* the estate realized the benefit of the forgery claim.[2] *See Salander*, 450 B.R. at 50-51. That is, he abandoned whatever interest in the Millbrook Property that remained after the Settlement Agreement but retained the interest the estate had derived from the alleged forgeries. *Id.* This concept of abandoning real property but retaining the benefit of a cause of action that was previously attached to that property is a purely legal one and one that probably does not exist outside of bankruptcy law. However, that is precisely what happened here. *See id.* (discussing a trustee's ability to abandon assets after realizing their benefits). Because the forgery claim had already been settled and its value consumed by the estate, the remainder of the real property that was abandoned was less valuable than it would have been had the Settlement not been reached. *Id.* As such, Wells Fargo cannot assert a claim of forgery that is premised upon the estate's claim—that claim was never abandoned; it was administered prior to the abandonment.

Wells Fargo argues that it has a direct, as opposed to a derivative, cause of action against First Republic. Wells Fargo's claim is direct, as opposed to derivative, if Wells Fargo can prevail without showing injury to the Debtor. *Druck Corp. v. Macro Fund Ltd., IIU*, 290 Fed. Appx. 441, 443 (2d Cir. 2008). To determine whether or not Wells Fargo's claim is direct or derivative this Court would need to apply state law. *Aboushanab v. Janay*, 2007 U.S. Dist. LEXIS 71278, *18-*19 (S.D.N.Y. Sept. 25, 2007). It has yet to be shown whether Wells Fargo will even be allowed to participate in the Foreclosure Action and as such, the state court is in the best position of determining which of Wells Fargo's claims, if any, are direct.

---

[2] Moreover, the estate received many benefits from the Settlement in question and First Republic has given up much of its pre-petition rights in exchange for the settlement of these claims. For a more detailed discussion of the estate's benefit and First Republic's consideration see *In re Salander*, 450 B.R. 37, 43-44 (Bankr. S.D.N.Y. 2011) or the Settlement Agreement at number 423 on the electronic docket for this bankruptcy case.

To the extent that the state court determines that Wells Fargo has a cause of action against First Republic for injuries that it suffered separate and apart from the Debtor's injuries or any other estate claim, Wells Fargo is entitled to assert those actions in the Foreclosure Action. To the extent that Wells Fargo is asserting an injury dependent upon the Debtor's injury, such claim is derivative and may not be raised by Wells Fargo. Any other estate cause of action raised by Wells Fargo, such as a claim stating that First Republic was unjustly enriched through the estate's treatment of First Republic's claim in this bankruptcy, has not been abandoned by the trustee and may not be plead by Wells Fargo. Those claims remain property of the estate and subject to the automatic stay. *See Salander*, 450 B.R. at 45 ("The automatic stay is intended to 'allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'") (quoting *United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir.1999)); *see also In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir. 1992) ("The purpose of the automatic stay is 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.'") (citation omitted).

Wells Fargo argues that its right to pursue the forgery claim was preserved in Settlement Agreement by the following language: "the Trustee agrees to stipulate to the lifting of the automatic stay with respect to the Millbrook Property and consents to [First Republic's] foreclosure on such property, subject to any other lienholder on the Millbrook Property's right to

contest such acts."[3]  It would be nonsensical for this clause to grant Wells Fargo the power to pursue estate claims or the same causes of action that the trustee was purporting to settle through the Settlement Agreement (and those claims that only he had standing to bring).  It is more likely that the trustee wanted to preserve lienholder's right to pursue *their own independent* cause of action in state court—an interpretation that is consistent with the plain meaning and purpose of the Settlement Agreement and with bankruptcy law.

## Conclusion

Subject to allowance by the state court, Wells Fargo is entitled to assert any direct cause of action that does not remain property of the estate and that has not been settled (and its benefit realized) by this estate. First Republic should submit an Order consistent with this Decision.

Dated: Poughkeepsie, New York
June 8, 2012

      /s/ Cecelia G. Morris_____
*Chief United States Bankruptcy Judge*

---

[3] It should be noted that at the time the Settlement Agreement was entered, the Millbrook Property continued to be property of the estate.  Since that time, the Millbrook Property has been abandoned.